# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                            Case No. 16-32469-WRS
                                                 Chapter 13

JUDITH LACY BOZEMAN,

     Debtor.

## MEMORANDUM DECISION

This Chapter 13 case involves a dispute between Debtor, Judith Lacy Bozeman and Mortgage Corporation of the South ("Mortgagee"), the holder of a mortgage on her home. This dispute arose when Mortgagee filed an objection to the Notice of Final Cure Payment and Notice of Completion of Plan Payments. (Docs. 48, 49, & 51). Mortgagee next filed a Motion for Relief from the Automatic Stay on the grounds that its mortgage had not been paid – contrary to the position of Trustee and Debtor that it had. (Docs. 57 & 60). Debtor subsequently filed a Motion to Deem the mortgage satisfied, and Mortgagee objected. (Docs. 74 & 76). At the Court's request, Debtor and Mortgagee filed briefs. (Docs. 76, 80, & 81). In addition, following the filing of the Notice of Final Cure Payment and the Notice of Completion of Plan Payments, Mortgagee filed amended proofs of claim. (Claims 2-2 & 2-3). Debtor objected to the amended claims contending that they were not filed timely. (Doc. 82). Mortgagee filed a response to Debtor's objection to claims. (Doc. 86). The Court conducted an evidentiary hearing on February 24, 2020.

The Court is called upon to decide three questions: (1) whether the Court should sustain Debtor's objection to the tardily filed amended claims of Mortgagee; (2) whether Debtor is entitled to a discharge; and (3) whether Mortgagee is entitled to relief from the automatic stay or whether Debtor's mortgage has been satisfied. For the reasons set forth below, the Court: (1) sustains

Debtor's objections to Mortgagee's amended claims; (2) finds that Debtor is entitled to a Chapter 13 discharge; and (3) denies Mortgagee's motion for relief from the automatic stay and determines Debtor's mortgage is satisfied.

## I. Facts

### A. The Chapter 13 Plan

On September 7, 2016, Debtor filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code. (Doc. 1). The Court set a claims bar date for January 16, 2017. (Doc. 5). Mortgagee filed a timely proof of claim on September 16, 2016. (Claim No. 2-1). Four days later, on September 20, 2016, Debtor filed her Chapter 13 plan. (Doc. 18). Debtor's plan proposed to pay the claim of Mortgagee in full over the life of the plan, with interest at the contract rate of 7.568%, with monthly payments of $456.[1] (Doc. 26). On January 14, 2017, Debtor's Chapter 13 plan was confirmed by the Court, without objection from Mortgagee. (Doc. 34).

In the schedules filed with the Court, Debtor indicated that Mortgagee was owed $17,393.04. (Doc. 17, Sch. D). However, in Claim 2-1, Mortgagee stated it was owed $6,817.42 – which is over $10,000 less than the amount scheduled by Debtor. It appears that the parties did not discuss this discrepancy. On September 9, 2016, Mortgagee filed a Motion for Relief from the Automatic Stay. (Doc. 9). But, Mortgagee later withdrew its motion. (Doc. 20). This Court confirmed the Debtor's Chapter 13 plan, without objection from Mortgagee, on January 14, 2017. (Doc. 34).

---

[1] Claim No. 2-1 indicates an interest rate of 19.7%, while Claims No. 2-2 and 2-3 indicate an interest rate of 7.568%. From this, the Court infers that the contract interest rate is 7.568%.

-2-

On August 24, 2017, the Trustee moved to dismiss Debtor's Chapter 13 case, alleging that Debtor was delinquent in plan payments in the amount of $2,788.00. (Doc. 36). Debtor filed a response to the motion stating that unexpected medical expenses had caused the delinquency and that she would make payments in the future. (Doc. 37). On December 27, 2017, apparently satisfied with the Debtor's progress, the Trustee withdrew her motion to dismiss. (Doc. 41). On March 9, 2018, Mortgagee filed a Motion to Dismiss, alleging that Debtor was behind in her plan payments. (Doc. 42). Mortgagee and Debtor settled their differences through an Agreed Order that was entered on May 14, 2018. (Doc. 46). The Agreed Order called for Debtor to make her Chapter 13 plan payments in the future and provided that if she did not do so, the case would be dismissed upon service of a notice of default by Mortgagee.

This case proceeded without incident until May 13, 2019, when the Trustee filed a Notice of Final Cure Payment and a Notice of Completion of Plan Payments. (Docs. 48 & 49). On May 14, 2019, Mortgagee filed a Response disputing the Trustee's statement that its mortgage had been paid in full – notwithstanding the fact the amount of Mortgagee's claim as filed had been paid in full. (Doc. 51). Mortgagee argued that only the mortgage arrearage had been paid and that a balance of $15,032.73 remained owing.

**B. The Amended Claims**

After the Trustee filed the Notice of Final Cure Payment and the Notice of Completion of Plan Payments, Mortgagee filed two amended claims. (Claim Nos. 2-2 and 2-3). Debtor objected to the amended claims, contending they should be disallowed because they were filed years after the claims bar date. (Doc. 82). As Mortgagee's objection to issuance of a discharge turns on the amount determined to be owed on the mortgage, the Court will review the three proofs of claim

filed by Mortgagee in detail. The Court conducted an evidentiary hearing on February 24, 2020, on the question of whether the amended claims should be allowed.

The following is a timeline of relevant dates:

| | |
|---|---|
| 09/07/16 | Petition Date |
| 09/09/16 | Motion for Relief from Stay filed by Mortgagee |
| 09/16/16 | Claim 2-1 filed ($6,817..42 secured) |
| 09/20/16 | Schedules and initial Chapter 13 Plan filed |
| 01/14/17 | Plan Confirmed |
| 01/16/17 | Claims Bar Date |
| 03/09/18 | Motion to Dismiss filed by Mortgagee |
| 05/13/19 | Notice of Final Cure Payment and Notice of Completion of Plan Payments |
| 05/14/19 | Claim 2-2 filed ($15,032.73 secured) |
| 09/13/19 | Claim 2-3 filed ($22,382.39 secured) |

At the evidentiary hearing, Mortgagee called John Williams, its President and Owner to testify concerning the claims of Mortgagee. Mr. Williams signed Claim 2-1. In response to a question from Mortgagee's counsel as to why he filed an "arrearage claim" he testified as follows:

> [T]he note was secured by the mortgage, as I said, on the borrower's primary residence, so we filed a proof of claim for the arrearage in the amount that the account was behind because that's what we always do. We filed a proof of claim, and it was our understanding that the arrearage would go in the plan and that was that.

(Doc. 98, p. 7).

Mr. Williams testified on cross examination concerning the "arrearage only claim" as follows:

> Q: Okay. Is there a reason you withheld from the Court the full amount of the debt that was owed by the debtor at that time?

-4-

A: Yes, there would be because, again, it was an arrearage at that point. I would never expect that the entire debt would be put into the plan. So, this was an arrearage only at that time, and when we filed this, we had not even seen a plan from the Court. This was just our initial filing. . . .

Q: But the debtor filed her proposed Chapter 13 plan on September 20th, 2016, after you filed the proof of claim, so at that time you were made aware of what the debtor proposed to pay through the plan, which was the full amount of the debt owed?

A: The full amount of the debt owed, the 17 –

Q: So at that time you did not file an amended proof of claim?

A: I did not.

(Doc. 98, pp. 13-14).

This testimony encapsulates the problem in this case. Mortgagee filed Claim 2-1 before Debtor filed her Chapter 13 plan. Mr. Williams testified that he was expecting a plan which would pay the arrearage. Indeed, in this Court, most, but not all, Chapter 13 plans which provide for a mortgage are "cure and maintain plans." In a cure and maintain plan, the debtor is to continue making the regular monthly mortgage payments directly to the mortgagee and the Chapter 13 Trustee pays the mortgage delinquency to the mortgagee from the plan payments. In such a plan, if all of the payments are made as called for, the debtor has a mortgage which is current at the time she exits bankruptcy. The problem in this case is that the Debtor's Chapter 13 plan provided for the entire debt to by paid by the Trustee through the Chapter 13 plan. As most Chapter 13 plans which provide for a mortgage are "cure and maintain" plans, Mortgagee's mistake was understandable. However, Debtor's plan was filed on September 16, 2016, yet the claims bar date was not until January 16, 2017, some four months later. Mortgagee had plenty of time to read the plan, see that it was a full payment plan, and amend its claim accordingly.

There is a certain obtuse quality to Mortgagee's actions here. Regardless of its understanding of Debtor's plan, it had only to properly complete the Proof of Claim form and it would have been paid. If one examines the form, the following numbers are called for: "Amount of the claim that is secured," "Amount of the claim that is unsecured," and "Amount necessary to cure any default as of the date of the petition." The amount of the claim that is secured, in this case, was the entire mortgage balance. The "Amount necessary to cure any default as of the date of the petition" which is the arrearage, is a separate amount. Yet, on Claim 2-1, Mortgagee lists the amount of its secured claim as $6,817.42 and the amount of the arrearage as also $6,817.42. A disinterested reader of Claim 2-1 would conclude that $6,817.42 was all that was owed to Mortgagee, and all of which was in arrears at the time the Debtor filed her petition. Why Mortgagee did not properly complete the Proof of Claim form is a mystery. Why it failed to amend its claim after Debtor filed a full payment plan, rather than a cure and maintain plan, is another.

Yet another mystery is why Mortgagee did not promptly discover its error based upon the payments it was receiving. If Mortgagee indeed thought that Debtor had filed a "cure and maintain" plan, it would have expected to receive payments of two kinds. First, it should have been receiving the monthly payments from Debtor under the terms of the original note and mortgage. This is sometimes called the maintenance payment. Second, it should have been receiving a second payment from the Trustee whereby Debtor was paying off the mortgage arrearage through the plan. This second payment is sometimes called the cure payment. Mortgagee certainly must have realized that it was not receiving payments from two sources. Yet, Mortgagee never questioned why it was not receiving payments consistent with what Mortgagee expected. Why it failed to do so is yet another mystery.

Case 16-32469    Doc 101    Filed 06/09/20    Entered 06/09/20 15:49:59    Desc Main
Document    Page 6 of 21

The Court notes two additional facts which weigh against Mortgagee. During the two and one-half years, from the filing of Debtor's plan, to the Notice of Final Cure Payment and Notice of Completion of Plan Payments, Mortgagee filed two documents with the Court, showing that it was actively participating in this case. First, on September 6, 2016, Mortgagee filed a Motion for Relief from the Automatic Stay – showing its collateral was a priority. That motion was withdrawn by Mortgagee on September 21, 2016, which was nearly simultaneous with the filing of the Debtor's schedules and initial plan.[3] The Court can infer from the timing of Mortgagee's withdrawal that the withdrawal was prompted by the filing of Debtor's Chapter 13 plan.

Second, Mortgagee filed a Motion to Dismiss, on March 9, 2018, requesting that the Court dismiss Debtor's case because she was delinquent on her plan payments. (Doc. 42). Mortgagee settled its motion with an Agreed Order calling for the Debtor to make future plan payments and further providing for dismissal, upon notice, if the Debtor defaulted on future payments. (Doc. 46). This is yet another instance where Mortgagee is shown to have been aware of the plan and its terms, yet inexplicably failed to amend its proof of claim.

## II. Law

The Court will divide its discussion of the legal issues into four parts. In Part A, the Court will discuss its jurisdiction. In Part B, the Court will consider the Debtor's objections to Mortgagee's late filed amended proofs of claim. In Part C, the Court will consider whether it should enter discharge. In Part D, the Court will consider Mortgagee's Motion for Relief from the Automatic Stay and Debtor's Motion to Deem mortgage satisfied.

---

[3] Debtor's initial Chapter 13 plan, filed on September 20, 2016, provided for payment in full of Mortgagee's claim. (Doc. 18)

## A. Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b). Proceedings to determine objections to claims are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B); proceedings to determine whether a debtor has completed her plan payments are core proceedings pursuant to § 157(b)(2)(A), (O); and proceedings to grant or deny relief from the automatic stay are core proceedings pursuant to § 157(b)(2)(G). This is a final order.

## B. Debtor's Objection to Mortgagee's Late Filed Amended Claims

To determine whether to allow Mortgagee's amended claims, the Court will consider the applicable Bankruptcy Code sections and Rules, as well as the pertinent reported case law and the equities of this case.

### 1. Applicable Code and Rules

In cases under Chapter 13, a debtor files a plan which is administered by a Trustee who pays creditors pursuant to the terms of the plan. 11 U.S.C. §§ 1321 & 1302. For a creditor to be paid, there must be a proof of claim filed for the amounts owed. The process by which claims are filed, objections are made, and claims ultimately allowed or disallowed by the Court, is regulated in considerable detail by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

"A creditor may file a proof of claim." 11 U.S.C. § 501. "A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). The Rules prescribe in detail what information must be provided. *See* Fed. R. Bankr. P. 3001(c). "A proof of claim executed and

-8-

filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of a claim. . . ." Fed. R. Bankr. P. 3001(f).

Rule 3002 provides, in part, as follows:

> (a) Necessity for filing.
> A secured creditor, unsecured creditor, or equity security holder must file a proof of claim or interest for the claim or interest to be allowed. . . .
>
> * * *
>
> (c) Time for filing.
> In a voluntary chapter 7 case, chapter 12 case, or chapter 13 case, a proof of claim is timely filed if it is filed not later than 70 days after the order for relief under that chapter or the date of the order of conversion to a case under chapter 12 or chapter 13. In an involuntary chapter 7 case, a proof of claim is timely filed if it is filed not later than 90 days after the order for relief under that chapter is entered. **But in all these cases, the following exceptions apply:** (emphasis added)

Rule 3002(c) sets out, in detail, 7 exceptions to the 70-day claims bar date – none of which apply here.

Rule 9006(b) provides as follows:

> (b) Enlargement
> (1) In general
> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done **where the failure to act was the result of excusable neglect.**
>
> (2) Enlargement not permitted
> The court may not enlarge the time for taking action under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024.

(3) Enlargement governed by other rules

**The court may enlarge the time for taking action under Rules** . . . **3002(c)** . . . only to the extent and under the conditions stated in those rules. (emphasis added)

The Code and the Rules regulate the filing and allowance of claims in considerable detail. The where, when, and how by which claims are filed has not been left to chance. In cases under Chapter 13, proofs of claim must be filed within 70 days of the filing of the petition. The Code provides that claims which are not timely filed may be disallowed. 11 U.S.C. § 502(b)(9). Rule 3002(c) sets out 7 exceptions to the 70-day rule, none of which apply here. Rule 9006(b) allows most time periods provided in bankruptcy practice to be extended upon a showing of excusable neglect. However, Rule 9006(b) carves out a number of exceptions, one of which is the time period prescribed by Rule 3002(c), which is the time period in issue here. In other words, the Rules do not permit an extension of the claims bar date in cases under Chapter 7 and 13, even upon a showing of excusable neglect.

The Bankruptcy Rules do not make any provision for amended claims. Yet, the Court notes that amended claims are commonly filed in bankruptcy cases and the Proof of Claim form contains a check box to indicate whether a claim amends one already filed. The Court further notes that Rule 7015, which concerns amended pleadings in adversary proceedings, does not apply to proofs of claim. Admittedly, some case law dealing with amended proofs of claim track the language of Rule 7015; however, such reliance is misplaced because Rule 7015, by its plain language, has no application to proofs of claim. The most logical inference to draw from this is that whether a proof of claim is an original claim or an amended claim, Rule 3002(c) applies in either case. Rule 7015, and its corresponding Rule 15, in the Federal Rules of Civil Procedure, have specific provisions providing for the relation back of amended pleadings to the original filing. As Rule 3002 contains no mention of amended proofs of claim, and correspondingly no mention

of relation back, the most logical conclusion to be drawn is that amended proofs of claim must be filed before the claims bar date.

One reading the Bankruptcy Code and Rules, and writing on a clean slate, might reasonably conclude that in situations such as this, the tardily filed claims of Mortgagee must be disallowed because they are late and because none of the Rule 3002(c) exceptions apply. As the excusable neglect provision of Rule 9006(b) is specifically negated, it appears the rules explicitly preclude any further allowances for an extension. Yet, there is a body of case law which suggests that upon certain, very limited circumstances, a bankruptcy court may grant relief from a claims bar date. Because of this body of law, which is not binding here, the Court will consider several relevant cases and consider the equities involved in allowing Mortgagee an extension of the claims bar date.

## 2. Applicable Case Law Does Not Favor an Extension

This Court finds a decision handed down by its sister court in the Southern District of Alabama persuasive. *In re Taylor*, 280 B.R. 711 (Bankr. S.D. Ala. 2001). In *Taylor*, a Chapter 13 case, a mortgagee filed a timely proof of claim. *Id.* at 713. However, the mortgagee mistakenly filed its claim as unsecured, rather than secured. *Id.* In an attempt to correct its error, the mortgagee filed an amended proof of claim years after the claims bar date. *Id.* The Court in *Taylor* held that "[l]ate amendments which raise new issues are only allowed if the creditor proves that granting the amendment is fair and imposes no undue hardship on a party. Factors that courts consider in balancing the equities include: undue delay, bad faith or dilatory motive on the part of the movant." *Id* at 715. The Court found that allowing such a late amendment would be prejudicial to the debtors and for that reason disallowed the late filed amended claim. *Id.* at 716.

-11-

Similar to the mortgagee in *Taylor*, Mortgagee made a mistake in the initial proof of claim – Mortgagee filed an arrearage claim and erroneously omitted the remainder of the amount owing under the mortgage. Also, like the mortgagee in *Taylor*, Mortgagee waited years after the claims' bar date to amend its proof of claim. In fact, Mortgagee waited until payments under the plan had been completed to amend its proof of claim. Mortgagee first doubled, and then tripled its original claim amount, to more than $22,000. It does not appear that Debtor in this case would have the ability to pay in full the amounts now claimed, and thereby would suffer a prejudice if the late filed claims were allowed.

A bankruptcy court in Oklahoma, discussing the problem of late amendments to a proof of claim said it well:

> Nobody likes deadlines, especially ones with consequences. In many ways, the bankruptcy system used in the United States of America is built upon notices, deadlines, and consequences. If a debtor fails to file required documents within the time set forth by rule or statute, his or her case is subject to dismissal. If a creditor fails to file a claim, it may not get paid from the bankruptcy estate. And, if a creditor fails to object to a plan, that creditor is likely to be stuck with its contents.

*In re Henry*, 532 B.R. 844, 845 (Bankr. N.D. Okla. 2015). In *Henry*, a debtor filed a proof of claim for a mortgagee who did not file a claim of its own or object to the debtor's plan. 532 B.R. at 846. Years after debtor filed the claim on behalf of the creditor and years after the debtor's plan was confirmed, the mortgagee attempted to amend the claim, contending that the amount provided by the debtor was too low. *Id.* The Court in *Henry* disallowed the attempted amendment and bound the mortgagee to the plan. *Id.* at 849. *See also In re Mullen*, No. 13-5879, 2015 WL 8252928, at *3 (Bankr. M.D. Fla. Nov. 16, 2015)(stating that "[p]ost-confirmation amendments are disfavored, for example, in part because of the *res judicata* effect of the confirmed plan and the likelihood that the distribution to other creditors will be altered").

Further guidance may be found in *In re Mason*, 520 B.R. 508 (Bankr. S.D. Miss. 2014). In *Mason*, a mortgage lender filed a timely proof of claim and a timely amended claim. 520 B.R. at 510. After completion of the Chapter 13 plan payments, the lender attempted to again amend its claim. *Id.* at 511-12. In disallowing the tardy claim, the Court stated that:

> the Court finds that allowing [the creditor] to amend its proof of claim, in such a large dollar amount, after the Debtor had completed all of his plan payments would be unfairly prejudicial to the Debtor. The Debtor paid [the creditor's] claim exactly as [the creditor] requested. Now that the Debtor has completed his plan payments, the fact that [the creditor] now claims that it is owed an additional $12,608.52, lies squarely with [the creditor].

*In re Mason*, 520 B.R. at 517; *see also In re Martinez*, 513 B.R. 779, 788 (Bankr. D. Puerto Rico)(disallowing late filed proof of claim finding that the mistake in the original proof of claim was solely the error of the creditor).

The courts handing down these cases were all of the view that they could allow late filed claims or late filed amended claims if the equities of their particular case dictated. Yet, they uniformly disallowed the claims on equitable grounds. In the case at bar, Mortgagee waited until the Trustee served the notice of final cure payment and notice of completion of plan payments– literally the last minute – to amend. Mortgagee here was in error. For reasons never explained, it ignored the plain language of the proof of claim form, and filed an "arrearage only" claim, notwithstanding the fact that the form called for the total amount of the secured claim on a line separate from the amount of the arrearage. Mortgagee's original proof of claim was $7,000, while the latest amended proof of claim is $22,000, a huge amount for an individual of Debtor's income to come up with at the end of the case. Moreover, if the Court were to grant Mortgagee leave to

file its tardy proof of claim, Debtor would almost certainly object, further delaying this case at this late date.[4]

Fault for the error in filing Mortgagee's original proof of claim lies solely upon Mortgagee. Yet, at every hearing, it has blamed everyone else in the case, Debtor, the Trustee, and even the Court, for its own error. At the February 24, 2020 hearing, Chapter 13 Trustee Sabrina McKinney stated as follows:

> I find it just absurd that the creditor seems to think that this is our fault that this happened when they obviously didn't read the plan, didn't see that the plan proposed to do what it proposed to do, and they just filed their claim and went on about their way without saying anything to anybody or even bothering to ask a question if they had a question about what the plan is.

(Doc. 98, p. 33). Debtor's plan proposed to pay Mortgagee in full, with interest. (Docs. 18, 26). The assumption on the part of Mortgagee, that it was a "cure and maintain" plan, rather than a payment in full plan, was its error. Had Mortgagee read the plan, read the amended plan, or observed the payments it was receiving were inconsistent with its assumption, it could have discovered its error and timely amended the proof of claim. To allow a late proof of claim here would be to reward Mortgagee for its lack of diligence and its duplicity–in blaming others and unfairly penalize Debtor. Assuming that a proof of claim may be amended after the claims bar date, a creditor must nevertheless demonstrate that the equities favor amendment. In this case, Mortgagee has made no such showing. For this reason, Debtor's Objection to Claims 2-2 and 2-3 are sustained and those claims disallowed. Claim 2-1 is allowed as filed.

---

[4] The Note was in the amount of $14,000 as of March 19, 2015, the date of its execution. Debtor filed bankruptcy September 7, 2016, about a year and a half later. How the principal balance could have grown from $14,000 to over $22,000 in such a short time has not been explained. Another oddity in Claim 2-3, the latest proof of claim, is that is shows a zero delinquency. Claim No. 2-3 is almost certainly wrong and if the amendment was allowed, the Court would undoubtedly be tasked with determining the correct amount of the claim–something that should be done early in the case.

-14-

## C. Discharge Should Enter

### 1. Debtor is Entitled to a Discharge Because She Has Made All of Payments Due under the Plan

On May 13, 2019, three years after Debtor filed her petition in bankruptcy, the Chapter 13 Trustee filed a Notice of Final Cure Payment and Notice of Completion of Plan Payments. (Docs. 48 & 49). Mortgagee does not dispute that Claim 2-1 has been paid in full. Rather, it contends that it is owed more, and the remaining balance, whatever it may be, will not discharge. Thus, Mortgagee asks the Court to protect it from its own folly. Debtor filed a Chapter 13 plan which proposed to pay Mortgagee in full and with interest. Mortgagee filed a proof of claim, to which no one objected, and which has been paid in full. Mortgagee contends that its claim is wrong and the amount by which it underreported the debt on Claim 2-1 should be excepted from discharge. Its argument runs contrary to 11 U.S.C. § 1328(a) which provides, in part, that "as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for under the plan or disallowed under section 502 of this title." Section 1328 contains several exceptions; however, none of the exceptions listed apply here. 11 U.S.C. § 1328. Debtor is entitled to a discharge upon completion of all plan payments. 11 U.S.C. § 1328(a). Because the Court has disallowed Mortgagee's Claims 2-2 and 2-3, and because Claim 2-1 and all other allowed claims filed in this case have been paid in full, Debtor is entitled to discharge. *Id*.

### 2. Mortgagee's Reliance on *In re Bateman* is Misplaced, and Does Not Alter Debtor's Right to a Discharge

Mortgagee cites the Eleventh Circuit case of *Universal Am. Mtg. Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003), in support of its argument that its mortgage should not be discharged. (Doc. 76). Mortgagee's reliance on *Bateman* is misplaced. *Bateman* involved a Chapter 13 bankruptcy case where a debtor was behind on its home mortgage. However, the similarity of *Bateman* with the case at bar ends there. In *Bateman* the debtor filed a "cure and maintain" plan, while Debtor in the case at bar filed a plan to pay the mortgage in full. This difference alone is sufficient to distinguish *Bateman*. However, before the Court goes any further, it will explain the differences in a "cure and maintain" plan and a "full payment" plan.

### a. "Cure and Maintain" Plans

To understand a "cure and maintain" plan, it is important to understand the "anti-modification rule" set forth in 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may–
>
> * * *
>
>> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . . ;

11 U.S.C. § 1322(b)(2)(sometimes called the "anti-modification rule"). In other words, a mortgage secured by a debtor's principal residence may not be modified under a debtor's plan.

To modify the rights of a holder of a secured claim means that a debtor may pay the value of the collateral to the holder of a secured claim, and treat the remainder, if any, as an unsecured claim. *See* 11 U.S.C. § 506; *see also*, *In re Butler*, 609 B.R. 895, 897-98 (Bankr. M.D. Ala.

2019)(discussing the bifurcation of a secured indebtedness into a secured claim, which is limited

to the value of the property securing the indebtedness, and an unsecured claim for any excess).

This right to modify a secured claim is an important right in those instances where collateral values

have fallen below the amount of the secured debt. The point of 11 U.S.C. § 1322(b)(2) is to protect

mortgagees from modification. In a Chapter 13 case, the debtor may not modify the rights of the

holder of a mortgage on his principal residence.

There is an exception to the anti-modification rule however:

> (5) notwithstanding paragraph (2) of this subsection, provide for the **curing** of any default within a reasonable time and **maintenance** of payments while the case is pending on any unsecured claim or secured claim on which the last payments is due after the date of which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5)(emphasis added).

Reading §§ 1322(b)(2) and (b)(5) together, a Chapter 13 debtor may "cure and maintain"

a home mortgage. This is a valuable right for a debtor who has fallen behind on his mortgage and

is facing foreclosure. In a "cure and maintain" plan, the debtor continues to make his monthly

payments pursuant to the terms of his original mortgage. This is called a "maintenance payment."

The mortgage arrearage is paid separately pursuant to the Chapter 13 plan. This is called the "cure

payment." The fact that Mortgagee in this case was not receiving both a cure and a maintenance

payment should have tipped it off that Debtor in this case was not acting under the "cure and

maintain" plan.[5]

---

[5] This is not to say it is necessary for a creditor to undertake such detective work to determine whether a debtor is operating under a cure and maintain plan. The best way to make this determination is to simply read the plan.

### b. "Full Payment" Plans

Secured claims are governed by the provisions of 11 U.S.C. § 1325(a)(5)(B)(ii). This provision requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." Debtor filed a Chapter 13 plan that proposed to pay the full balance of the debt owed to Mortgagee. Mortgagee filed a secured claim in the amount of $6,817.42. (Claim 2-1). As no objection was made to either the proposed plan or Mortgagee's claim, the plan was confirmed, and the claim was allowed as filed. 11 U.S.C. § 502(a).

In *Bateman,* the debtor filed, and the court confirmed, a "cure and maintain" plan. 331 F.3d at 823. The problem in *Bateman* was the creditor filed a proof of claim for an arrearage amount which was greater than the arrearage amount provided for under the plan. *Id.* at 822-23. The creditor in *Bateman* did not object to the plan and the debtor did not object to the claim. *Id.* at 823. The court was later faced with the problem of the conflict between the unobjected to claim which was deemed allowed under 11 U.S.C. § 502(a) and the binding effect of the Chapter 13 plan under 11 U.S.C. § 1327(a). *Id.* at 827-28. The Eleventh Circuit in *Bateman* resolved the conflict by allowing the debtor his discharge but further holding that the unobjected to claim amount did not discharge.[6] *Id.* at 828-29.

The case before the Court and *Bateman* are wholly distinguishable and Mortgagee's reliance on *Bateman* is unfounded. In the case at bar, there is no conflict between Debtor's plan

---

[6] The Bankruptcy Court in the Southern District of Florida recently handed down a thoughtful decision which considered whether *Bateman* was abrogated by *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367 (2010). *In re Edwards*, 604 B.R. 417 (Bankr. S.D. Fla. 2019). Without stating so explicitly, the Court in *Edwards* found that an order confirming a Chapter 13 plan could not be collaterally attacked, citing the binding effect of the plan under *Espinosa*. Debtor argues in her brief that *Espinosa* abrogated *Bateman*. This Court is of the view that it need not make that determination as *Bateman* is distinguishable.

and Mortgagee's claim. Debtor's plan provided to pay Mortgagee's debt in full. The fact that Mortgagee did not object to confirmation of Debtor's proposed plan, and that it filed a proof of claim in an amount less than that scheduled by Debtor in her bankruptcy filings indicate that Mortgagee was then on board with the Debtor's Chapter 13 plan. A quick review of the docket sheet reveals Mortgagee filed several documents throughout the case, which shows Mortgagee was actively participating in the case and was satisfied with its treatment under the plan. Likewise, there was no objection to Mortgagee's claim and Mortgagee made no attempt to amend its claim after the proposed plan was filed. As such, Mortgagee's claim was allowed as filed.

Based upon the Trustee's representation that all plan payments have been made, the Court finds that Debtor has completed her plan payments. Because Debtor has made all the payments required under her plan, Debtor is entitled to a discharge pursuant to 11 U.S.C. § 1328(a).

### 3. Mortgagee's Argument the Court has Confirmed an "Illegal" Plan is Without Merit

Mortgagee argues that this Court confirmed an "illegal" plan and, for that reason, its claim should survive Debtor's bankruptcy. The Supreme Court has held that:

> Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief. We thus agree with the Court of Appeals that the Bankruptcy Court's confirmation order is not void.

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276, 130 S.Ct. 1367, 1380 (2010). In *Espinosa*, the Supreme Court acknowledged the Bankruptcy Court's judgment was legally erroneous in that it discharged a student loan without making a determination of undue hardship and without initiating an adversary proceeding. *Id.* It was the creditor's failure to object to the

Case 16-32469    Doc 101    Filed 06/09/20    Entered 06/09/20 15:49:59    Desc Main
Document      Page 19 of 21

debtor's plan in *Espinosa* which was fatal to the creditor's motion. The same can be said here. Mortgagee should have timely objected to the Debtor's plan; its failure to do so is fatal.

Mortgagee argues the Court confirmed an illegal plan, citing a raft of Bankruptcy Code sections, without analysis. (Doc. 81). While the Supreme Court's holding in *Espinosa* is dispositive, Mortgagee's argument is in error. First, Mortgagee stubbornly refuses to acknowledge this is a "full payment" plan and not a "cure and maintain" plan. To be sure, Debtor could have filed a "cure and maintain" plan had she chosen to do so; however, the Code does not force that upon her. If one examines the structure of 11 U.S.C. § 1322, it is apparent that the § 1322(a)(1) and (2) provisions are mandatory: the plan "shall." On the contrary, all of the § 1322(b) provisions are permissive and not mandatory, as they are preceded with the term "may." The cure and maintain provision is contained in 11 U.S.C. § 1322(b)(5). Thus a debtor may, but is not required to, file a cure and maintain plan.

Mortgagee further argues that the plan is illegal because it violates the anti-modification rule. (Doc. 81). Mortgagee is incorrect on this point. Debtor's plan proposed to pay Mortgagee's claim in full, with interest. And it did so. That Mortgagee did not include the entire amount that it believed was owing was folly on its part, but did not result in a violation of the anti-modification rule. In a recent case handed down by a Bankruptcy Court in the Southern District of Florida, it was held that even if the anti-modification rule is violated (something that did not happen here) confirmation of the plan binds the parties. *In re Edwards*, 604 B.R. 417, 422-23 (Bankr. S.D. Fla. 2019). Thus, Mortgagee is incorrect on two counts. First, the anti-modification rule was not violated here; and, second, if it was, *Espinosa* and *Edwards* provide that it does not matter because Mortgagee did not object.

-20-

**D. Mortgagee's Motion for Relief from the
Automatic Stay Should be Denied; and, Debtor's
Motion to Deem Mortgage Satisfied Should be
Granted**

As set out in Part I above, the parties have filed a plethora of motions and objections. To wrap up any loose ends, the Court will note that because the indebtedness due Mortgagee has been paid in full, its Motion for Relief from the Automatic Stay is denied. For the same reason, Debtor's Motion to Deem mortgage satisfied is granted.

### III. Conclusion

The Court sustains Debtor's objections to the late filed claims of Mortgagee, because to allow Mortgagee's late filed claim would be inequitable. As Debtor has paid all allowed claims in full, including Claim 2-1 of Mortgagee, she is entitled to a discharge. Mortgagee erred in filing its claim, erred in reading or understanding Debtor's plan, and failed to timely object to the plan – none of which qualifies Mortgagee from relief from Debtor's discharge. The Court will enter an Order by way of a separate document.

Done this 9th day of June, 2020.

William R. Sawyer
United States Bankruptcy Judge

c:      Debtor
        Charles E. Grainger, Attorney for Debtor
        Burton W. Newsome, Attorney for Creditor
        Mortgage Corporation of the South

-21-